ANTONIO J. CASANOVA, Plaintiff and Appellant, v. HERIBERTO SÁNCHEZ, Defendant and Appellee.

No. 11733. Argued March 1, 1956.—Decided April 30, 1956.

*Enrique Tristani, Jr.* for appellant. *Héctor Lugo Bougal* and *Carlos J. Irizarry Yunqué* for appellee.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Dr. Antonio J. Casanova, alleging that he was the owner of a certain house and lot in Juana Díaz, filed this unlawful

detainer suit at sufferance in the Superior Court against Heriberto Sánchez. The question is whether the trial court erred in dismissing the complaint on the ground that the evidence adduced at the trial showed a conflict of titles.

The plaintiff introduced in evidence a public instrument entitled "Deed of Judicial Sale", executed in 1954 by him and the Marshal of the District Court of Juana Díaz. There was included in this deed the judgment, findings of fact and conclusions of law of the said district court in another suit by Dr. Casanova against Heriberto Sánchez and his wife for collection of money. The said findings of fact and conclusions of law recite that Dr. Casanova lent Heriberto Sánchez sums of money over a period of time in order that the latter might repair the house involved herein; that the money was so used but was never repaid by Heriberto Sánchez; and that Dr. Casanova was entitled to a judgment for $1,800 against Heriberto Sánchez and his wife. The deed sets forth the judgment and states that it was affirmed on appeal by the Superior Court. The deed goes on to say that, in execution of the said $1,800 judgment, all the right, title and interest of the defendants in the house and lot were sold to Dr. Casanova at public auction for $600; and that the Marshal was therefore conveying the house and lot to Dr. Casanova by virtue of the deed.

Dr. Casanova testified that Heriberto Sánchez, by a private document executed in 1949 in the form of an affidavit, sold him the house and lot, but that later he and Heriberto Sánchez agreed verbally to set aside the sale and that Dr. Casanova agreed to lend Heriberto Sánchez the money to reconstruct the house.

Emilio Sánchez testified on behalf of the defendant in substance as follows: He is the defendant's father. He and his wife had 2 children, Carmen and Oscar, in addition to Heriberto. He and his wife purchased the house and lot

herein in 1925 from Juan José Arroyo and María Cid by a public deed. This deed was thereafter introduced in evidence. His wife died in 1940. Oscar was born in 1935. He has never sold this property to anyone. A great many repairs have been made to the house, some as recently as 3 months ago, for which he paid. He does not live in the house. The witness, his second wife, and his son Oscar live in another house. Heriberto and his wife have been living in the house involved herein for 3 years because Heriberto had a right to live there as a son and heir.

On cross-examination, Emilio Sánchez was shown a private document, executed in the form of an affidavit in 1947, which recited that he and his children, Heriberto and Carmen, sold the house and lot herein to Justo Muñoz for $125. This document stated that Emilio Sánchez and Rosa Valls Ortiz, his wife, had purchased the house and lot from Juan José Arroyo and María Cid in 1925 by public deed; that Rosa Valls had died; and that Emilio Sánchez, as her widower, and their 2 children, Heriberto and Carmen, were the sole and universal heirs of Rosa Valls. The 1947 document did not mention Oscar, who was then a minor and was the other child of Emilio Sánchez and Rosa Valls. The witness testified that the foregoing 1947 private document was not meant to be a sale of the house and lot but rather a mortgage to Justo Muñoz to secure a loan from Muñoz which the witness repaid within a month. This 1947 affidavit executed in favor of Muñoz was subsequently introduced in evidence.

The defendant also offered in evidence a motion filed in the above-mentioned suit for collection of money by Dr. Casanova against Heriberto Sánchez and his wife in the district court. This motion was filed in 1954 on behalf of the defendants "and/or Carmen and Oscar Sánchez", praying for suspension of the sale of the house and lot to satisfy the judgment for collection of money in favor of Dr. Casanova.

against Heriberto Sánchez.[1] The motion alleged that Rosa Valls and Emilio Sánchez had died, leaving Heriberto, Oscar and Carmen as their only and universal heirs; and that Heriberto was not the owner of the property but merely had an undivided one-third interest therein.[2] This motion was denied and as already noted the judicial sale of the house and lot to Dr. Casanova was effectuated.

On rebuttal, Justo J. Muñoz, testified on behalf of the plaintiff. He stated that the 1947 affidavit whereby he bought the property from Emilio Sánchez and his children, Heriberto and Carmen, was, as it appears on its face, a purchase and not a mortgage. He also stated that by a private document in the form of an affidavit he sold the property on September 5, 1949 to Heriberto Sánchez for $200. This document was thereafter introduced in evidence. The witness was never informed by Emilio, Heriberto or Carmen Sánchez, when he purchased the property from them in 1947, of the existence of Oscar, who was then a minor. Subsequently, the house "disappeared" and a new house was built on the lot.

On surrebuttal, the defendant introduced in evidence a private document in the form of an affidavit whereby on September 5, 1949, Heriberto Sánchez sold the house and lot to Dr. Casanova.

Dr. Casanova was then called as a witness by the defendant. The witness' attention was called to part of his testimony in the suit for collection of money in which he stated that the transaction with Heriberto was a loan of money. The witness insisted that the said testimony was not inconsistent with his testimony in this case that he and Heri-

---

[1] Oscar, who was born in 1935, was still a minor when this motion was filed in 1954. He therefore could not join in such a motion in his own name. The motion was signed, ostensibly representing Heriberto, Carmen and Oscar, by the attorney who represented Heriberto throughout the suit for collection of money and this case.

[2] Emilio Sánchez apparently died after he testified in this case.

berto originally had signed a document whereby Heriberto sold the house and lot to the witness, but that a few hours later they made a verbal agreement pursuant to which they set aside the sale and Dr. Casanova lent Heriberto the money to repair the house.

The trial court held that the foregoing testimony showed a conflict of title which required it to dismiss the complaint. It stated in part as follows:

"One is struck by the fact that if the plaintiff, Dr. Antonio J. Casanova, acquired title to the property herein from the defendant in 1949, what reason did he have to appear at the public sale in 1954 in order to acquire the same property? This whole series of commercial operations inclines us to believe that, both the sale made to Mr. Muñoz as well as to the plaintiff Dr. Casanova, represented only loans by them to the defendant by virtue of the said documents.

"The rule that prevails in Puerto Rico is that when the title of the plaintiff in an unlawful detainer suit stems from the execution of a void judgment, the said title is null and that the nullity thereof is a valid defense in the unlawful detainer suit because it raises a conflict of titles that can not be determined within the narrow limits of the proceeding. *Huertas* v. *Rosario,* 50 P.R.R. 346; *Dávila* v. *Sotomayor,* 35 P.R.R. 726.

"In the case before us the defendant presented evidence tending to show the nullity or nonexistence of the plaintiff's title and, in addition, to establish that his defense is not a pretext. In any event, we are of the opinion that the conflict of title or the nonexistence or nullity of the plaintiff's title may not be determined in a summary proceeding such as an unlawful detainer suit, but rather in a plenary trial where both parties, as well as the heirs of Rosa Valls Ortiz, may present ample testimony to explain this situation and the alleged transfers to Muñoz and Dr. Casanova which have the appearance of being guarantees for loans and not contracts of sale."

■■ A plaintiff is not entitled to evict a defendant in an unlawful detainer suit at sufferance if the plaintiff's title, obtained at a judicial sale, is null. *De León* v. *Pérez et al.,* 54 P.R.R. 202. But we do not agree that Heriberto Sán-

·chez is entitled to invoke that rule under the circumstances ·of this case. Here there was a chain of private documents whereby the following purported sales of the property took place: (1) in 1947, from Emilio Sánchez and two of his ·children to Justo Muñoz; (2) on September 5, 1949, from Muñoz to Heriberto Sánchez; (3) on September 5, 1949, from Heriberto to Dr. Casanova. It is true that sufficient ·evidence was introduced to raise the question that these transactions were guarantees of loans rather than sales.[3] But even if we treat these transactions as guarantees rather than sales, this means at the most that the property still belonged to Emilio Sánchez and his children when the judi-·cial sale to Dr. Casanova took place in 1954. Under this ·theory Heriberto had an interest in the property at that time. Consequently, Dr. Casanova was entitled in 1954 to ·execute the final judgment for collection of money in his favor against Heriberto by a judicial sale of the right, title and interest of Heriberto in the property. *Carle* v. *Benítez*, 46 P.R.R. 182. *Cf. Bank of Nova Scotia* v. *Benítez*, 52 P.R.R. 681; *Benítez* v. *Bank of Nova Scotia*, 110 F. 2d 169, 172 (C.A. 1, 1940). Other members of Heriberto's ·family, who are not parties to this suit, may also have an ·interest in the property. But Heriberto may not raise that ·fact as a valid defense in this unlawful detainer suit against him by Dr. Casanova, who bought at the judicial sale any right, title and interest Heriberto might have in the prop-erty. See *Ríos* v. *Román*, 71 P.R.R. 193, and cases cited; *Crespo* v. *Irizarry*, 71 P.R.R. 902, 907; *Meléndez* v. *Pacheco; García, Int.*, 75 P.R.R. 89, 93–4; *Colón* v. *Rivera*, 61 P.R.R. 541, 545; *Delgado* v. *Pimentel et al.*, 20 P.R.R. 521; *Gonzá-*

---

[3] If these transactions were loans, presumably the affidavit of September 5, 1949 by Muñoz in favor of Heriberto was the method of can-celling the guarantee after payment of the loan. By the same token, the affidavit executed on the same day by Heriberto in favor of Dr. Casa-nova was to guarantee another loan.

*lez* v. *Aponte*, 55 P.R.R. 797; *Municipality of Ponce* v. *Collazo*, 56 P.R.R. 485. *Cf. Chabrán* v. *Méndez*, 74 P.R.R. 719, 725–6.

On the other hand, if we accept the private documents at their face value as sales, the chain of title shows that Dr. Casanova acquired the property on September 5, 1949 and has owned it since that date, except for the possible defect that Oscar, the minor, was not represented in the sale in 1947 by Emilio, Heriberto and Carmen to Muñoz. But here again Heriberto, having sold his interest in the property to Dr. Casanova, has no right to resist his ouster by relying on the fact that his brother Oscar, who is not a party to this suit, may still have an interest in the property. See cases cited in preceding paragraph.[4]

The case comes down to this: Treating the private documents as guarantees of loans rather than sales, prior to the judicial sale in 1954 Heriberto owned the property, together with his brother and sister, and Dr. Casanova acquired the interest of Heriberto therein by virtue of the 1954 judicial sale. Treating the private documents as sales, the property has belonged to Dr. Casanova since 1949, except possibly for the interest of Oscar. It follows that there is no conflict of titles *on which Heriberto can rely to remain in the possession of this property as against Dr. Casanova* who, on either theory, now owns all the right, title and interest in the property which was formerly vested in Heriberto. To hold otherwise would mean that a defendant who had no rights whatsoever could successfully resist an unlawful detainer suit by raising a possible contention that the plaintiff, who is admittedly at least a co-owner of the property, was not the sole owner thereof. That is a question to be determined between the alleged co-owners. It is not a proper defense

---

[4] The private documents did not comply with the requirements of § 1232(1) of the Civil Code, 1930 ed., 31 L.P.R.A. § 3453(1). But they were binding on the parties who executed them, §§ 1230–31 of the Civil Code, 31 L.P.R.A. §§ 3451–52.

in an unlawful detainer suit brought by a plaintiff, who without question is at least a co-owner of the property, against a defendant who clearly has no ownership interest and has no right to use or possession of the property.

The trial court found it unnecessary to pass on the contention of the defendant that he was entitled as a person in military service to a stay of these proceedings under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. App. § 521. The defendant offered no testimony to establish that his ability to conduct his defense was materially affected by his military service. He was therefore not entitled to a stay in these proceedings under § 521. *Canet* v. *District Court*, 61 P.R.R. 146.

The judgment of the Superior Court will be reversed and a new judgment entered granting the prayer of the complaint for eviction of the defendant from the house and lot involved herein.